UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL A. WASIK,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 09-14933

District Judge Paul D. Borman
Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Plaintiff Samuel A. Wasik brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for ongoing Disability Insurance Benefits. Before the Court are the parties' cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that both summary judgment motions be STAYED, and that the case be REMANDED pursuant to Sentence Six of 42 U.S.C. § 405(g), with this Court retaining jurisdiction following post-remand proceedings.[1]

---

[1] Under 42 U.S.C. §405(g), a Sentence Six remand (in which the district court retains jurisdiction) "does not attach to any substantive ruling but merely remands the matter for further review in light of newly discovered evidence which is to be considered by the administrative law judge and therefore does not constitute a 'judgment' from which appeal can be taken." *Melkonyan v. Sullivan,* 501 U.S. 89, 97-99, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). The reviewing court does not grant summary judgment, but merely remands for further review. *Id*. The court "may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g)." *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993). However, the court retains jurisdiction in a Sentence Six remand, and enters final judgment only "after post-remand agency proceedings have been completed and their results filed with the court." *Shalala v. Schaefer*, 509 U.S. 292, 297, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); *see also Melkonyan*, 501 U.S. at 98.

## PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") on February 28, 2006, alleging disability as of July 18, 2005 (Tr. 91-93). After the initial denial of benefits, Plaintiff requested an administrative hearing, held on September 30, 2008 in Oak Park, Michigan (Tr. 42). Administrative Law Judge ("ALJ") Jacqueline Hall-Keith presided (Tr. 42). Plaintiff, represented by attorney Margaret O'Donnell, testified, as did vocational expert ("VE") Elizabeth Pasikowski (Tr. 45-65, 65-72). On November 18, 2008, ALJ Hall-Keith determined that Plaintiff was disabled for a closed period, beginning July 18, 2005 and ending July 7, 2008, but not disabled from July 8, 2008 through the date of the decision (Tr. 20). On November 7, 2009, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the administrative decision on December 21, 2009.

## BACKGROUND FACTS

Plaintiff, born May 17, 1966, was 42 when the ALJ issued her decision (Tr. 91). He graduated from highschool and worked previously as a delivery driver (Tr.127). Plaintiff's application for benefits alleges disability as a result of a spinal cord injury (Tr. 126).

### A. Plaintiff's Testimony

Plaintiff, married with two minor children, testified that he stood 5' 10" and weighed 175 pounds (Tr. 46). He denied vocational training beyond highschool but reported that he could perform simple arithmetic (Tr. 47). Plaintiff reported that he stopped working on July 18, 2005 as a result of a spinal cord injury (Tr. 49). He denied that he had since looked for work, noting that his doctors precluded him from bending, lifting, twisting, standing, or sitting for extended periods (Tr. 49). A UPS driver before the injury, Plaintiff reported that his job duties entailed delivering and picking up packages of up to 150 pounds (Tr. 49-150). Plaintiff estimated that at present, he could walk a maximum of two blocks, stand for 20 minutes and sit for 45 (Tr. 50). He testified that he was unable to lift more than ten pounds, noting that he was unable to carry items for more than ten feet (Tr. 51). He reported that he was able to grocery shop, provided he was not required to lift

over 10 pounds (Tr. 52). He denied manipulative limitations, but reported only a limited ability to engage in activities requiring the use of foot pedals (Tr. 53). He reported that he could climb stairs, but experienced balance problems due to his "drop foot" (Tr. 54).

Plaintiff testified that he experienced chronic back and left foot pain, noting that he currently used a TENS unit three times a day to combat muscle atrophy (Tr. 55). He reported that pain medication made him sleepy, noting that he reclined four or five times a day for one hour at a time (Tr. 56-57). He testified that he also engaged in home therapy (Tr. 57). He stated that his "foot drop" had improved since undergoing July, 2005 surgery, noting that he had initially experienced paralysis as a result of the accident (Tr. 57). Plaintiff reported that his doctors told him that he had reached his "medical maximum" (Tr. 58). He admitted that he was able to dress himself, bathe, drive for short distances, cook, and shop, but was unable to vacuum, change bed linens, take out garbage, or perform yard work tasks (Tr. 58-59).

Plaintiff reported that a typical day consisted of arising at six, making coffee, packing his daughters' lunches, reclining, eating breakfast, shopping, watching television, driving his daughters from school or to dance classes, eating dinner, and doing laundry (Tr. 60). He denied illicit drug use (Tr. 60). In response to questioning by his attorney, Plaintiff reported that he had been cleared for driving recently, noting that prior to that time, leg cramping and numbness had prevented him from the use of foot pedals (Tr. 60). He indicated that his wife helped him perform therapy exercises (Tr. 64). Plaintiff ended his testimony by opining that his above described limitations precluded all work (Tr. 64).

### B. Medical Evidence

#### 1. Treating Sources

In July, 2005, Plaintiff reported foot paralysis following a workplace accident (Tr. 153). Several days later, he sought emergency treatment, at which time an MRI revealed a moderate disc desiccation with a "large" disc protrusion (Tr. 160, 164). He underwent an immediate

decompressive laminectomy at L3, L4, L5, and S1 (Tr. 159, 162-163). Plaintiff was discharged three days later in stable condition (Tr. 155).

In August, 2005, Richard W. Easton, M.D., noting a diagnosis of foot drop, gave Plaintiff a "good" prognosis, prescribing physical therapy (Tr. 380). September, 2005, therapy notes show that Plaintiff was able to drive, but continued to experience back and foot pain (Tr. 203). However, November, 2005 therapy notes indicate that due to leg and foot weakness, Plaintiff was advised not to drive (Tr. 202). A December, 2005 therapy discharge report, noting that Plaintiff had undergone 43 treatments since July, 2005, stated that his condition had plateaued after several months of "good gains" (Tr. 175).

A January, 2006 EMG showed denervation at L5 (Tr. 278-279). In June, 2006, an MRI showed mild to moderate neuroforaminal stenosis at L4-5 and L5-S1 (Tr. 376). Dr. Easton's March, 2006 office notes indicate that Plaintiff requested refills of Vicodin, Robaxin, and Cataflam (Tr. 374). In June, 2006, Dr. Easton, relying on recent imaging studies, opined that Plaintiff would "never most likely return to work in his capacity at UPS" (Tr. 334). Dr. Easton's December, 2006 notes state that Plaintiff's "neurologic examination [was] improving but . . . not back to normal" (Tr. 331). He opined that Plaintiff's disability was permanent (Tr. 331). In January, 2007, Dr. Easton again opined that Plaintiff was permanently disabled from all UPS work (Tr. 377). In May, 2007, imaging studies again showed denervation at L5 (Tr. 274). In June, 2007, Esther L. Young, D.O. performed a neurological evaluation of Plaintiff, observing drop foot (Tr. 263). Dr. Young opined that despite improvements made in ongoing physical therapy, she doubted that Plaintiff would make a full recovery (Tr. 265). She recommended that Plaintiff continue physical therapy (Tr. 265). Later the same month, Dr. Young, reviewing recent imaging studies, found no new herniation (Tr. 262).

In July, 2007 Dr. Easton reviewed imaging studies from the previous month, noting "fairly severe disc space collapse at [L]4-5 level" (Tr. 266-268, 329). He opined that the condition could "lead to a need for a decompression and fusion operation in the future" (Tr. 266). In November, 2007, Dr. Easton noted that Plaintiff's symptoms were improved by changing positions, lying down,

resting, standing, and stopping activity, but also worsened by lying down, sitting, sleeping, standing, and walking (Tr. 320-321). February, 2008 studies showed continued neuropathic changes at L5 (Tr. 272). In April, 2008, Dr. Easton reiterated that Plaintiff was "temporarily . . . to possibly permanently disabled" with a "likely" need for "lumbar spine fusion in the next 1-3 years" (Tr. 328). He found that Plaintiff's symptoms were improved by lying down, resting, and stopping activity (Tr. 314). Dr. Easton directed Plaintiff to avoid bending, carrying, lifting, pulling, pushing, reaching, sitting, and twisting, finding again that Plaintiff was "permanently disabled" (Tr. 313). A May, 2008 MRI showed a moderate disc bulge at L4-5 (Tr. 384).

In July, 2008 Dr. Easton composed a letter on behalf of Plaintiff's application for DIB benefits, opining that Plaintiff was limited to 10 pounds lifting, sitting for four hours a day and standing/walking for two (Tr. 390). Dr. Easton precluded Plaintiff from all repetitive bending, lifting, twisting, pushing or pulling as well as temperature extremes (Tr. 390). He found further that Plaintiff "may need to lie down during the day to relieve pain or discomfort" (Tr. 390). He opined that Plaintiff's condition met or was equal to "Section 1.04 A. of the federal regulations" (Tr. 390).

### 2. Consultive and Non-Examining Sources

In July, 2006, A. Said, M.D. performed a consultive examination of Plaintiff on behalf of the SSA (Tr. 247). Dr. Said, noting Plaintiff's July, 2005 injury and surgery, observed a left straight leg raise at 40 degrees with left hip and back pain (Tr. 242). Dr. Said also noted that Plaintiff used a brace "to compensate for left foot drop" and weakness in both feet due to the spinal cord injury (Tr. 243). Plaintiff was unable to bend, stoop, or carry more than 10 pounds (Tr. 246).

The following month, Dr. Edna Feibusch performed a non-examining Residual Functional Capacity Assessment based on Plaintiff's medical records (Tr. 250-256). She found that Plaintiff was limited to 10 pounds lifting, walking and/or standing for two hours in an eight-hour period, and sitting for six (Tr. 250). Plaintiff's ability to push and pull was deemed unlimited (Tr. 250). Plaintiff was limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing

(stairs/ramps) and precluded from all climbing of ladders, ropes, or scaffolds (Tr. 251). Dr. Feibusch found the absence of manipulative, visual, or communicative limitations but found that Plaintiff was precluded from working with machinery or at heights (Tr. 252-253).

In November, 2006, Robert A. Krasnick, M.D. performed an independent medical examination ("IME") of Plaintiff (Tr. 257-260). Plaintiff reported improvement since the July, 2005 accident, but noted that he still experienced left leg and foot numbness (Tr. 257). Plaintiff reported "mild" back pain and stiffness (Tr. 258). He stated that he could perform self-care activities, but did not drive, noting that his wife helped him with physical therapy activities two hours each day (Tr. 258-259). Dr. Krasnick opined that Plaintiff was "currently disabled from performing his job duties at UPS," but pending his Dr. Easton's lessening of restrictions, might "be able to return to gainful employment if there is work available to him within those restrictions" (Tr. 260).

### 3. Material Submitted After the November 18, 2008 Administrative Opinion

An October, 2008 assessment by Dr. Easton states that Plaintiff experienced weakness, tingling, numbness, stiffness, and spasms. *Docket #11*, *Exhibit A,* pg. 11 of 19. Plaintiff reported that his spasms were getting worse. *Id.* In May, 2009, an MRI of the lumbar spine showed bilateral laminectomy defects at L4-L5 with epicural fibrosis touching on the nerve root. *Docket #11, Exhibit C* pg. 1-2 of 4. In June, 2009, Dr. Easton completed a "clarification" of his earlier opinion (Tr. 390) indicating that his July, 2008 opinion ought not to have been interpreted to state that Plaintiff's disability had ended. *Docket #11, Exhibit B,* pg. 3 of 4. He opined that Plaintiff had been continuously disabled from July, 2005 forward. *Id.* at pg. 4. The following month, Gino Sessa, M.D. examined Plaintiff, noting 5/5 strength in all four extremities and a normal gait. *Docket #11, Exhibit D,* pg. 2 of 2. However, Dr. Sessa remarked that Plaintiff's complaints of increasing pain and continued foot drop were corroborated by a recent MRI. *Id.* In September, 2009, Dr. Easton opined that Plaintiff's condition had become worse since his previous appointment (Tr. 393).

C.     **Vocational Expert Testimony**

VE Elizabeth Pasikowski classified Plaintiff's former job as a UPS delivery driver, (as performed) as semiskilled at the very heavy exertional level[2] (Tr. 66).

In response to questioning by the ALJ, the VE testified that if Plaintiff were limited to semiskilled light work, he would be unable to return to his former job, but possessed skills transferrable to other driving positions (3,200 jobs in the regional economy)(Tr. 66). If Plaintiff were capable of a full range of light (otherwise unskilled) work, he could also perform the jobs of assembler (6,200); inspector (3,400); information clerk (2,700); and cashier (12,500) (Tr. 67). If Plaintiff were capable of light work but limited by the need for a sit/stand option, the numbers would be reduced as follows: inspector (1,600); assembler (3,100); and information clerk (1,300) (Tr. 68).

As to sedentary positions, the VE testified that if Plaintiff were capable of a full range of sedentary work, he could perform the jobs of an information clerk (1,400); ID clerk (1,300); video surveillance monitor (1,700); visual inspector (2,300); and sorter (2,200) (Tr. 68). If he were capable of sedentary work limited by the need for a sit/stand option, the numbers would be reduced as follows: information clerk (1,200); video surveillance monitor (unchanged); visual inspector (1,600); and sorter (1,400)[3] (Tr. 68).

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." § 404.1567(e).

[3] The VE omitted ID clerk from her sampling of sedentary jobs with a sit/stand option (Tr. 68).

The VE stated that if Plaintiff's account of his exertional limitations were credited, he would be capable of sedentary work with a sit/stand option, but that his self-professed *non-exertional* limitations (leg weakness, balance, foot drop, medication side effects, and the need to lie down intermittently several times a day) would preclude all work (Tr. 69). In response to questioning by Plaintiff's attorney, the VE testified that if Plaintiff were further limited by a preclusion on working at heights or with moving machinery, the sedentary, sit/stand job numbers would remain unchanged (Tr. 70).

### D.     The ALJ's Decision

Citing Plaintiff's medical records, ALJ Hall-Keith found that the conditions of "L3-4 disc herniation status post decompressive laminectomy with residual but improving left foot drop, L5 radiculopathy, and degenerative disc disease L3-S1 with neural foraminal stenosis but without spinal canal stenosis" were "severe," but determined that none of the conditions met or medically equaled the conditions listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 18-19).

The ALJ found that between July 18, 2005 and July 7, 2008, Plaintiff experienced the following Residual Functional Capacity ("RFC"):

> [A] limited range of sedentary work . . . . Specifically, the claimant could lift less than 10 pounds occasionally or frequently; sit, stand or walk for less than a total of eight hours in a work day; push or pull with total preclusion in the left foot; perform postural activities rarely to occasionally; perform any manipulative function; see, hear and speak without limitation; and perform work in any environment. Mentally, the claimant could not, on a sustained and continuous basis, understand, remember and carry out simple instructions; make judgments on simple work-related decision; interact appropriately with the public, supervisors and co-workers; respond appropriately to work pressures in a usual work setting; or respond appropriately to changes in a routine work setting

(Tr. 19). Accordingly, she found that between July 18, 2005 and July 7, 2008, Plaintiff was unable to perform any work (Tr. 21).

Next, citing 20 C.F.R. 404.1594(b)(1), the ALJ found next that as of July 8, 2008, Plaintiff had undergone a "medical improvement" with the following RFC for sedentary work:

> Specifically, the claimant can lift 10 pounds occasionally; lift up to 10 pounds frequently; sit, stand or walk for a total of eight hours in a work day with a sit/stand option; push or pull without limitation; perform postural activities occasionally; perform any manipulative functions; see, hear and speak without limitation; and perform work in any environment. Mentally, due to a reasonable degree of pain and discomfort and medication side effect, the claimant can understand, remember and carry out simple instructions; make judgments on simple work-related decisions; interact appropriately with the public, supervisors and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting

(Tr. 21). Citing the VE's job numbers, she concluded that Plaintiff could work as an information clerk, an ID clerk, video surveillance monitor, visual inspector, and sorter (Tr. 23).

The ALJ found that Plaintiff's allegations "concerning the intensity, persistence and limiting effects" of his condition were "not credible beginning on July 8, 2008, to the extent they [were] inconsistent with the residual functional capacity assessment" (Tr. 22). ALJ Hall-Keith noted that "the frequency of treatment petered off significantly after July 2007" (Tr. 23). She also found that Plaintiff's claim of medication side effects were not supported by treatment records (Tr. 23).

**STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must

examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has

the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS
### A. Listing 1.04A

Plaintiff, contending that his disability did not end on July 7, 2008, argues first that at Step Three of the administrative sequence, the ALJ ignored overwhelming evidence that he met Listing 1.04A. *Plaintiff's Brief* at 5 (citing 20 C.F.R. Pt. 404, Subpart. P, Appendix. 1, § 1.04A).

Section 1.04 of the Listing of Impairments states the requirements for a disability resulting from diseases of the spine:

> "Evidence of nerve root compression characterized by neuro-anatomic distribution
> of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle

weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight- leg raising test (sitting and supine)."

20 C.F.R. Pt. 404, Subpart. P, Appendix. 1, § 1.04A.

Plaintiff points to imaging studies and examination findings from July, 2005 forward to support his "Step Three" argument. However, only of a fraction of these records are pertinent to the question of whether his disability ended on July 7, 2008. The ALJ did not dispute that Plaintiff was disabled until this date; accordingly, medical records created in the first two years after his injury (July, 2005 through July, 2007) shed little light on his post-July 7, 2008 condition. Likewise, as discussed in Section **D.** of this analysis, material submitted subsequent to the ALJ's decision cannot be considered by this Court in determining whether Plaintiff is entitled to summary judgment. *Cotton v. Sullivan,* 2 F.3d 692, 695-696 (6th Cir.1993). Thus the material summarized above in the factual background (Section **B.3.**) while containing support for Plaintiff's claim for ongoing benefits, cannot be considered here.

Substantial evidence, drawn from the records properly under consideration support the finding that the disability ended on July 7, 2008. The ALJ cited Plaintiff's acknowledgment that he could use a power tool, drive a car, climb stairs, and walk for a few blocks, noting that these statements were not inconsistent with the RFC finding (Tr. 21-22). She also observed that while Plaintiff reported ongoing medication side effects, his treating records did not document such complaints (Tr. 23). In addition, other medical records created in the months before July 8, 2008 can be read to indicate that Plaintiff's condition was improving. In November, 2007 Plaintiff exhibited a normal gait and only mild atrophy in the lower extremities with 4/5 strength (Tr. 327). His upper extremity testing, showing full strength and muscle tone, was unremarkable (Tr. 327). While Dr. Easton found in April, 2008 that Plaintiff was still either temporarily or permanently disabled, it is arguably unclear whether he was referring to UPS work or all gainful employment (Tr. 313, 334). Finally, while Dr. Easton opined in July, 2008 that Plaintiff met Listing 1.04A, he

neglected to complete the accompanying assessment explaining the reasons for his conclusion. *Plaintiff's Brief* at 7 (citing Tr. 390)*.* As such, Plaintiff has not met his burden to show disability at Step Three.

**B. Medical Improvement**

On a related note, Plaintiff argues that the ALJ's finding of a medical improvement as of July 8, 2008 "misapplies the regulations" and is not supported by substantial evidence. *Plaintiff's Brief* at 9-11 (citing 20 C.F.R. 404.1594(a)).

While Plaintiff is technically correct that the ALJ did not adhere to the analysis required by §404.1594, this argument is nonetheless without merit. Although the ALJ cited §404.1594 in finding a "medical improvement" as of July 8, 2008, in fact, §404.1594 was inapplicable to her findings (Tr. 23). The fairly stringent requirements of §404.1594 pertain to a "continuing disability review" ("CDR") in which "the Secretary attempts . . . to determine whether a claimant, *who was found disabled at a previous hearing*, is still disabled." *Long v. Secretary of Health and Human Services,* 1994 WL 718540, *2 (6th Cir. 1994)(emphasis added); §404.1594; *See also Gillespie v. Commissioner of Social Sec.,* 2010 WL 4063713, *3 (E.D.Mich.2010)(Lawson, J.).

In contrast here, the ALJ need only have only determined that *substantial evidence* supported a medical improvement in finding a closed period of disability. *Id.* at *3. As discussed above, evidence relevant to whether Plaintiff is entitled to summary judgment supports the conclusion that he had experienced a medical improvement as of July 8, 2008.

For overlapping reasons, Plaintiff's secondary argument that the ALJ did not "give good reasons" for rejecting Dr. Easton's disability opinion is unavailing. *Plaintiff's Brief* at 10-11 (citing 20 C.F.R. 404.1527(d)(2)). The ALJ thoroughly discussed her reasons for rejecting a portion of Dr. Easton's findings, noting that the treating physician's statements that Plaintiff would likely require additional surgery in the future were "not incompatible with the ability to work" (Tr. 22). She noted that as of April, 2008, Plaintiff was cleared to drive (Tr. 22). Given Plaintiff's concession that Dr.

Easton's July, 2008 letter was unaccompanied by an assessment detailing functional limitations, *see Plaintiff's Brief* at 7, the ALJ reasonably determined that the disability opinion was "conclusory" (Tr. 22). While Plaintiff once again cites liberally from material submitted after the administrative decision to show that the treating physician analysis was flawed, the latter submitted records cannot be used to support the summary judgment motion.

**C. Credibility**

Plaintiff contends next that the RFC findings were tainted by the fact that the ALJ improperly discredited his allegations of continuing disability. *Plaintiff's Brief* at 16-18. He argues that the ALJ discounted his claims on the improper basis that he was involved in litigation against a former treating physician. Plaintiff also claims that the ALJ overemphasized the importance of his daily activities in making the credibility determination. *Id.* at 16.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record." [4]

---

[4] C.F.R. 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in evaluating the making the determination:

> "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing

Plaintiff's argument is unavailing. First, he contends that the ALJ improperly used his malpractice litigation against Dr. Machesky to discredit both his testimony and Dr. Easton's findings. *Plaintiff's Brief* at 16. Plaintiff is correct that "the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 247 (6th Cir. 2007)(citing Soc. Sec. Rul. 96-7p, 1996 WL 374186, at * 4). However, "there is nothing patently erroneous in the ALJs decision to rely on her own reasonable assessment of the record over the claimant's personal testimony." *White v. Commissioner of Social Sec.*, 572 F.3d 272, 287 (6th Cir. 2009). Combined with Plaintiff's ability to drive, and the lack of documentation supporting his claims of side effects, the ALJ's observation that financial motivation may have contributed to Plaintiff's overstatement of his limitations was not unreasonable.

**D. Sentence Six Remand**

Last, Plaintiff argues that "new and material" records, submitted after the ALJ's November, 2008 decision, support a remand pursuant to the sixth sentence of 42 U.S.C. §405(g).[5] *Plaintiff's Brief* at 18-20.

Under §405(g), the Court may grant a Sentence Six remand only upon a showing that there is new evidence which is material and that there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*; *see also Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 483 (6th Cir.2006). Material that is not contained in the administrative transcript

---

for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

[5]Although Plaintiff's attorney avers that the new material was submitted for Appeals Council review, only three pages of the additional records (Tr. 393-395) were included with the transcript. Further, the Council's November 7, 2000 notice does not mention the added records, unlike its usual policy of stating that it had "considered but not reviewed" latter-submitted material (Tr. 1-3).

or duplicative of formerly submitted records is "new." *Street v. Commissioner of Social Security,* 390 F.Supp.2d 630, 641-642 (E.D.Mich.2005).

First, newer records pertaining exclusively to Plaintiff's condition *subsequent* to the November 19, 2008 administrative decision are irrelevant to the present determination. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir. 1988). Thus, a number of records, consisting of prescription slips post-dating the administrative decision, May, 2009 imaging studies, and an August, 2009 assessment by a consultive source are not relevant to whether Plaintiff is entitled to a Sentence Six remand. Albeit for differing reasons, Dr. Easton's October 27, 2008 treating notes, referring to Plaintiff's pre-decision condition, cannot be considered since Plaintiff has not offered a "good cause" for failing to submit them before the November 19, 2008 decision. *Plaintiff's Brief* at 20; *Exhibit A.*

Although Dr. Easton's June, 2009 "clarification" of his July 7, 2008 opinion letter refers to Plaintiff's pre-decision condition and could not have been composed or submitted prior to the decision, whether Plaintiff has shown good cause for its late submission is a closer question. *Docket #11, Exhibit B.* As noted by Defendant, Dr. Easton's June, 2009 "clarification" was written in response to the ALJ's finding that the treating opinion was unsupported by objective findings (Tr. 22). This *by itself* would not constitute good cause. "[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability. *Haney v. Astrue,* 2009 WL 700057, *6 (W.D.Ky. 2009)(*citing Thomas v. Secretary,* 928 F.2d 255, 260 (8th Cir., 1991).

Nonetheless, three factors weigh in favor of both a "good cause" finding and the materiality of the newer records. First, the ALJ's statement that Dr. Easton's July, 2008 disability opinion was "conclusory," (not unreasonable given the limited information at her disposal at the time of the decision) is undermined by Dr. Easton's later-submitted Listing 1.04A assessment. *Docket #11, Exhibit B.* A reasonable probability exists that the ALJ would not have found that Dr. Easton's opinion "conclusory" if his Listing 1.04A assessment had been considered. *Sizemore,* 865 F.2d at

711. Consistent with the requirements of the Listing, Dr. Easton found that Plaintiff experienced nerve root compression with a neuro-anatomic distribution pain, muscle weakness, the absence of an Achilles reflex, and positive straight-leg raising *Id.* His effort to correct with clinical support what he believed was an erroneous interpretation of his July, 2008 opinion letter constitutes "good cause."

Second, objective studies in fact support Dr. Easton's revised assessment of Plaintiff's July, 2008 condition. May, 2008 EMG studies show "chronic nerve root injury" (Tr. 274). Third, Dr. Easton's June, 2009 clarification of his July, 2008 opinion, in conjunction with his Listing 1.04A assessment, is wholly consistent with his multiple disability statements issued over the course of Plaintiff's treatment history (Tr. 313, 331, 390).

Because Dr. Easton's records-specifically his letter of clarification and his Listing 1.04A assessment– are both new and material to Plaintiff's request for ongoing benefits beyond July, 2008, a Sentence Six remand for administrative review of those newer records is appropriate.

## **CONCLUSION**

For these reasons, I recommend that both summary judgment motions be STAYED, and that the case be REMANDED pursuant to Sentence Six of 42 U.S.C. § 405(g), with this Court retaining jurisdiction following post-remand proceedings.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                               s/R.Steven Whalen
                               R. STEVEN WHALEN
                               UNITED STATES MAGISTRATE JUDGE

Dated: December 3, 2010

_____

**CERTIFICATE OF SERVICE**

I hereby certify on December 3, 2010 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on December 3, 2010: **None.**

                               s/Michael E. Lang
                               Deputy Clerk to
                               Magistrate Judge R. Steven Whalen
                               (313) 234-5217