**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SAMUEL A. WASIK,

       Plaintiff,                     Civil Case No. 09-14933
                                                 UNITED STATES DISTRICT JUDGE
v.                                            PAUL D. BORMAN

                                                 MAGISTRATE JUDGE
                                                 R. STEVEN WHALEN
COMMISSIONER OF
SOCIAL SECURITY

       Defendant.
_____/

**OPINION AND ORDER (1) GRANTING DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,
(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
(3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND
(4) DISMISSING THE ACTION**

Now before the Court is the Commissioner of Social Security's ("Defendant") Objections to Magistrate Judge R. Steven Whalen's Report and Recommendation ("R&R") staying both Defendant's and Samuel Wasik's ("Plaintiff") summary judgment motions and remanding to the Administrative Law Judge ("ALJ"). Defendant's Objections were filed on December 17, 2010 (Dkt. No. 20). Plaintiff responded on December 30, 2010 (Dkt. No. 21).

For the reasons stated below, the Court will

(1) Grant Defendant's Objections to Magistrate Judge R. Steven Whalen's Report and Recommendation;

(2) Grant Defendant's Motion for Summary Judgment;

(3) Deny Plaintiff's Motion for Summary Judgment, and

1

(4) Dismiss the action.

## I. BACKGROUND

On February 28, 2006, Plaintiff filed an Application for Disability Insurance Benefits ("DIB"). (R. 91). After the application was denied, Plaintiff requested a hearing, which was held on September 30, 2008, before ALJ Jacqueline Hall-Keith. (R. 42). The ALJ ruled that Plaintiff did qualify for DIB for a period beginning on July 18, 2005, and ending on July 7, 2008. (R. 20). The ALJ determined that Plaintiff's condition had markedly improved on July 7, 2008, and as a result he no longer qualified for DIB after that date. (R. 21). Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review. (R. 1). Plaintiff then filed a Complaint with this Court on December 21, 2009. (Dkt. No. 1).

The medical evidence in this case was summarized in Magistrate Judge Whalen's Report and Recommendation:

> In July, 2005, Plaintiff reported foot paralysis following a workplace accident [R. 153]. Several days later, he sought emergency treatment, at which time an MRI revealed a moderate disc desiccation with a "large" disc protrusion [R. 160, 164]. He underwent an immediate decompressive laminectomy at L3, L4, L5, and S1 [R. 159, 162-63]. Plaintiff was discharged three days later in stable condition [R. 155].
>
> In August, 2005, Richard W. Easton, M.D., noting a diagnosis of foot drop, gave Plaintiff a "good" prognosis, prescribing physical therapy [R. 380]. September, 2005, therapy notes show that Plaintiff was able to drive, but continued to experience back and foot pain [R. 203]. However, November, 2005 therapy notes indicate that due to leg and foot weakness, Plaintiff was advised not to drive [R. 202]. A December, 2005 therapy discharge report, noting that Plaintiff had undergone 43 treatments since July, 2005, stated that his condition had plateaued after several months of "good gains" [R. 175].
>
> A January, 2006 EMG showed denervation at L5 [R. 278-79]. In June, 2006, an MRI showed mild to moderate neuroforaminal stenosis at L4-5 and L5-S1 [R. 376]. Dr. Easton's March, 2006

> office notes indicate that Plaintiff requested refills of Vicodin, Robaxin, and Cataflam [R. 374]. In June, 2006, Dr. Easton, relying on recent imaging studies, opined that Plaintiff would "never most likely return to work in his capacity at UPS" [R. 334]. Dr. Easton's December, 2006 notes state that Plaintiff's "neurologic examination [was] improving but . . . not back to normal" [R. 331]. He opined that Plaintiff's disability was permanent [R. 331]. In January, 2007, Esther L. Young, D.O. performed a neurological evaluation of Plaintiff, observing drop foot [R. 263]. Dr. Young opined that despite improvements made in ongoing physical therapy, she doubted that Plaintiff would make a full recovery [R. 265]. She recommended that Plaintiff continue physical therapy [R. 265]. Later the same month, Dr. Young, reviewing recent imaging studies, found no new herniation [R. 262].
>
> In July, 2007 Dr. Easton reviewed imaging studies from the previous month, noting "fairly severe disc space collapse at [L]4-5 level" [R. 266-68, 329]. He opined that the condition could "lead to a need for a decompression and fusion operation in the future" [R. 266]. In November, 2007, Dr. Easton noted that Plaintiff's symptoms were improved by changing positions, lying down, resting, standing, and stopping activity, but also worsened by lying down, sitting, sleeping, standing, and walking [R. 320-21]. February, 2008 studies showed continued neuropathic changes at L5 [R. 272]. In April, 2008, Dr. Easton reiterated that Plaintiff was "temporarily . . . to possibly permanently disabled" with a "likely" need for "lumbar spine fusion in the next 1-3 years" [R. 328]. He found that Plaintiff's symptoms were improved by lying down, resting, and stopping activity [R. 314]. Dr. Easton directed Plaintiff to avoid bending, carrying, lifting, pulling, pushing, reaching, sitting, and twisting, finding again that Plaintiff was "permanently disabled" [R. 313]. A May, 2008 MRI showed a moderate disc bulge at L4-5 [R. 384].

(R&R at 3-5).

In a letter dated July 7, 2008, Dr. Easton stated that Plaintiff "has permanent restrictions of no lifting over 10 pounds occasionally, standing and walking less than two hours total in an eight hour day, sitting less than 4 hours total in an eight hour day." (R. 390). Dr. Easton also stated that Plaintiff's "impairment meets or is equal to Section 1.04A of the federal regulations." (R. 390). This letter was apparently in response to Plaintiff's requesting Dr. Easton to complete a form entitled

3

"Listing § 1.04A - Spinal Nerve Root Compression," a blank copy of which is included in the Record. (R. 391-92).

On November 18, 2008, the ALJ issued a decision stating that Plaintiff was under a disability and entitled to DIB from July 18, 2005, until July 7, 2008, the date of Dr. Easton's letter. (R. 21). The ALJ found that, as of July 8, 2008, Plaintiff's disability ended. (R. 21). After July 8, 2008, the ALJ found that Plaintiff could "lift 10 pounds occasionally; lift up to 10 pounds frequently; sit, stand or walk for a total of eight hours in a work day with a sit/stand option; push or pull without limitation; perform postural activities occasionally; perform any manipulative functions; see, hear and speak without limitation; and perform work in any environment." (R. 21). With regard specifically to Dr. Easton's claims that Plaintiff was disabled, the ALJ found they were "not consistent with the evidence" and were "generally conclusory."

After the ALJ's opinion, Plaintiff submitted to this Court additional medical records, which included a "clarification" from Dr. Easton regarding his July 7, 2008 letter.

> In June, 2009, Dr. Easton completed a "clarification" of his earlier opinion [R. 390] indicating that his July, 2008 opinion ought not to have been interpreted to state that Plaintiff's disability had ended. [Pl.'s Mtn. Ex. B at 3 (Dkt. No. 11)]. He opined that Plaintiff had been continuously disabled from July, 2005 forward. *Id*. at 4.

(R&R at 6). Plaintiff also submitted a "Listing § 1.04A" form that was completed post-hearing by Dr. Easton. (Pl.'s Mtn. Ex. B).

## II. LEGAL STANDARD

Where a party has objected to portions of a Magistrate Judge's Report and Recommendation, the Court conducts a *de novo* review of those portions. Fed. R. Civ. P. 72(b).

Defendant objects only to Magistrate Judge Whalen's recommendation to remand. The Court will therefore decline to review all other findings in the Report and Recommendation.

4

*Thomas v. Arn*, 474 U.S. 140, 149-150 (1985).

This Court's review of the administrative proceedings is limited to determining whether the ALJ's decision was supported by "substantial evidence." 42 U.S.C. § 405(g); *Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). "Substantial evidence" means sufficient relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted). If the decision is supported by substantial evidence, it "must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Id*.

"A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)[.]" *Hollon v. Comm'r of Social Security*, 447 F.3d 477, 482-83 (6th Cir. 2006). The party seeking a remand must show "(i) that the evidence at issue is both 'new' and 'material,' and (ii) that there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Id*. at 483 (quoting 42 U.S.C. § 405(g)). A Sentence Six remand is appropriate where there is a "reasonable probability" that the decision below would have been different if the ALJ had been "presented with the new evidence." *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The District Court retains jurisdiction on a Sentence Six remand; it is not a final judgment that can be appealed. *Melkonyan v. Sullivan*, 501 U.S. 89, 97 (1991).

### III. ANALYSIS

Defendant argues that the evidence submitted by Plaintiff after the ALJ's decision does not warrant a remand. As an initial matter, the Court notes that Magistrate Judge Whalen recommended a remand based specifically on Dr. Easton's June 2009 letter of clarification and his "Listing § 1.04A" form assessment. (R&R at 16). Magistrate Judge Whalen found that all of the other medical records should not be considered. (R&R at 15). However, Defendant appears to have objected to

the Magistrate Judge's entire analysis. Therefore, the Court will review *de novo* Plaintiff's arguments regarding all of the newly submitted records.

### A. Records Dated Before the ALJ's Decision

Post-hearing, Plaintiff submitted records from Dr. Easton that are dated from early August to late October of 2008. (Pl.'s Mtn. Ex. A). Magistrate Judge Whalen found that these records should not be considered because Plaintiff had not demonstrated a "good cause" for failing to submit them prior to the ALJ's decision. (R&R at 15).

Plaintiff has not offered "good cause" for failing to include these records to the ALJ before her decision. Neither Plaintiff's Motion for Summary Judgment nor his Response to Defendant's Objections address "good cause" regarding these records. Accordingly, Plaintiff has not met his burden with regard to these records, and they cannot serve as a basis for a Sentence Six remand.

### B. Dr. Easton's Clarification Letter and § 1.04A Assessment

Defendant argues that remand should not be permitted based on Dr. Easton's clarification letter and § 1.04A assessment, because "Plaintiff clearly sought out the completion of this form for the sole purpose of establishing continuing disability." (Def.'s Obj. 8). Defendant contends that this does not qualify as "a valid reason for [Plaintiff's] failure to obtain evidence prior to the hearing." *Oliver v. Sec'y of Health and Human Servs.*, 804 F.2d 964 (6th Cir. 1986). Defendant also argues that this evidence is not material: "the ALJ pointed out that while Dr. Easton opined that the severity of Plaintiff's back impairment was so severe as to meet or equal a Listing, it was not so limiting as to preclude bending, lifting, twisting, pushing/pulling, or lifting greater than 10 pounds[.]" (Def.'s Obj. 9). Defendant argues that the new evidence would not negate this "internal inconsistency" that caused the ALJ to find Dr. Easton's opinion not credible. (Def.'s Obj. 9).

Prior to the ALJ's decision, Plaintiff had asked Dr. Easton to complete a § 1.04A

6

Assessment.  (Pl.'s Resp. 6).  Instead of completing the form as requested, however, Dr. Easton provided the July 7, 2008 letter with the conclusory statement "This patient's impairment meets or is equal to Section 1.04A of the federal regulations."  (R. 390).  Plaintiff's counsel received a copy of this letter (Pl.'s Resp. 5).  The ALJ, thereafter, stated that the medical opinion expressed in this letter was "changed greatly" from Dr. Easton's opinion just two months prior.  (R. 22).

As Defendant noted in its objections to the Magistrate Judge's Report and Recommendation: "The fact that Dr. Easton declined to complete this particular form on July 7, 2008, does not establish good cause for now submitting a completed version of it after the ALJ's decision." (Def.'s Obj. 7).  That Plaintiff's counsel did not predict that the ALJ would reject Plaintiff's claim does not justify his argument that he is entitled to go back to Dr. Easton after his claim was rejected and get a more favorable report.

Plaintiff does not have a valid reason for not timely submitting a more completed form; he submitted the form as Dr. Easton had responded prior to the ALJ's determination, and did not, after receiving the form, contact Dr. Easton pre-ALJ-hearing.  The new and improved and more completed Dr. Easton report, based on evidence existing prior to the ALJ's decision, will not be treated as new evidence.  Plaintiff has not shown good cause for failing to submit this evidence prior to the ALJ's decision.

However, even if Plaintiff can demonstrate a valid reason for failing to obtain the clarification letter and Dr. Easton's § 1.04A Assessment prior to the administrative hearing, Plaintiff cannot show a "reasonable probability" that this new evidence would have caused a different outcome at the administrative proceeding.  *Sizemore*, 865 F.2d at 711.

Although the ALJ noted that Dr. Easton provided only "generally conclusory statements" (R. 22), substantial evidence in the record supports the ALJ's finding of medical improvement.

7

Specifically, the ALJ's opinion stated as follows:

> [B]y December 2005, the claimant had partially met physical therapy goals, EMG results indicated objective improvement, and clinical abnormalities had decreased. Even Dr. Easton noted in June and December 2006 that the foot drop was resolving, and in November 2006 the claimant was able to walk a short distance without his foot orthotic. Dr. Easton's comments as to possible or probable future surgery are not incompatible with the ability to work.

(R. 22).

Significantly, the ALJ noted that, at the hearing, Plaintiff "admitted he could use a power tool, drive a car, climb stairs, touch his knees although not his toes, carry ten pounds occasionally and lesser weight more frequently, walk a few blocks, stand for 20 minutes at a time, and sit for 45 minutes at a time." (R. 22). The ALJ summarized the evidence as follows:

> Certainly, the persistence of treatment lends to the credibility of the claimant's allegations as do the diagnostic test results. However, both relate improvement rather than permanent inability to work. It is also noted that the frequency of treatment petered off significantly after July 2007. The undersigned notes that the claimant's reports of pain throughout are quite low, and even nonexistent on one occasion, with medication. While the claimant testified to significant medication side effect, such is not documented by any treating physician.

(R. 23).

Given the ALJ's above analysis – particularly, her emphasis on gradual medical improvement as reflected in the medical records and her misgivings regarding Dr. Easton's opinions – Plaintiff has not shown a reasonable probability that Dr. Easton's § 1.04A Assessment and clarification letter would result in a different outcome. Neither of these documents undermines the evidentiary issues with which the ALJ was most concerned. Thus, Plaintiff has not demonstrated that this evidence is material, and Sentence Six remand is therefore not warranted.

### C. Records Dated After the ALJ's Decision

Plaintiff has also submitted treatment records of Dr. Easton dated several months after the ALJ's decision, as late as May 27, 2009. In addition, Plaintiff has submitted MRI records dated May 27, 2009, and EMG records dated June 24, 2009, as well as a report by Esther Young, D.O., dated August 24, 2009. Defendant argues that none of these records are material because they "are not probative of Plaintiff's condition at the time of the administrative decision." (Def.'s Obj. 9). Plaintiff asserts that the records are material because they relate to the issue of improvement after July 7, 2008. (Pl.'s Resp. 7).

New evidence that demonstrates a DIB applicant's deteriorating condition is not relevant to a remand determination under Sentence Six. *See Sizemore*, 865 F.2d at 712. Records that show a lack of improvement, which were created after the ALJ's disability determination, cannot be used to show disability existed at the time of the disability determination. *See id*. Thus, Plaintiff has not met his burden of showing that these records are material.

## IV.  CONCLUSION

For the reasons stated above, the Court:

(1) **GRANTS** Defendant's Objections to Magistrate Judge R. Steven Whalen's Report and Recommendation;

(2) **GRANTS** Defendant's Motion for Summary Judgment;

(3) **DENIES** Plaintiff's Motion for Summary Judgment, and

(4) **DISMISSES** the action **WITH PREJUDICE**.

This is a final order and closes the case.

SO ORDERED.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: February 24, 2011

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 24, 2011.

S/Denise Goodine
Case Manager